The STATE of Ohio, Appellee,

v.

BELCHER, Appellant.

[Cite as *State v. Belcher* (1993), 89 Ohio App.3d 24.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1719.

Decided June 10, 1993.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Joyce S. Anderson*, Assistant Prosecuting Attorney, for appellee.

*Thomas D. Belcher, pro se.*

BOWMAN, Judge.

Appellant, Thomas D. Belcher, who was convicted of voluntary manslaughter in 1986, appeals the denial of his petition for postconviction relief.

In *State v. Belcher* (Sept. 15, 1987), Franklin App. No. 86AP–982, unreported, 1987 WL 17386, appellant directly appealed from his judgment of conviction, assigning as error that the trial court had erred in failing to impanel a new jury upon its determination that the jury chosen was in violation of the United States Supreme Court's holding in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

*Batson* held that peremptory challenges may not be used to challenge potential jurors solely on the basis of race. To support a *Batson* objection, a defendant must show that the prosecutor used peremptory challenges to remove from the venire members of a cognizable racial group, raising an inference that the use of the peremptory challenges was solely racially motivated. *Batson*, as modified by *Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. The burden then shifts to the prosecutor to present a neutral explanation for the use of the peremptory challenges. *Id.*

In *Belcher*, appellant additionally charged that the basis for the trial court's refusal to impanel a new jury, that appellant's counsel had failed to timely object to the venire, constituted ineffective assistance of counsel and so would support a reversal of his conviction.

In his direct appeal, this court found that appellant had made a prima facie showing that the prosecutor had used his peremptory challenges to exclude all African–Americans from the jury, but determined that it was not possible to ascertain from the trial court's remarks whether the trial court would have sustained the *Batson* objection if it had been timely raised, since the trial court did not opine as to the credibility of the prosecutor's articulated bases for the use of the challenges. This court therefore concluded that, based only on the record of the proceedings at the trial, appellant had not sufficiently demonstrated that his *Batson* objection was meritorious so as to support a showing of prejudice arising out of the ineffective assistance of counsel, as is required by *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Affirming the judgment of conviction, this court nevertheless stated that, because appellant's claim of ineffective assistance of counsel depended upon evidence outside the record, appellant would be required to pursue postconviction remedies.

On February 22, 1988, appellant filed a petition to vacate or set aside judgment, pursuant to R.C. 2953.21, in which he reasserted his claim that he had received ineffective assistance when his counsel failed to timely assert a *Batson* objection, and appellant's case was transferred to another common pleas judge.

On May 31, 1988, a hearing on appellant's petition commenced with testimony presented by appellant, his expert, his trial counsel, and the original trial judge. On June 20, 1988, the judge who conducted the postconviction-relief hearing issued a decision finding that the prosecutor's explanation for the exclusion of the African–Americans from the jury was "entirely plausible without regard to any racial considerations." The court concluded that the voir dire survived the *Batson* test and, thus, that appellant had not proved the existence of a meritorious claim which would support his assertion of ineffective assistance of counsel. The court therefore overruled appellant's motion to vacate the judgment of conviction.

Appellant filed a notice of appeal to this court, which was dismissed in September 1988 for lack of a final appealable order, the trial court having failed to file a judgment entry after rendering its decision.

On November 9, 1990, appellant filed a motion to reconsider the trial court's decision denying postconviction relief and the state responded by providing its own findings of fact and conclusions of law, which the trial court did not sign. On December 26, 1991, appellant filed a motion seeking issuance of findings of fact and conclusions of law and renewing his motion for reconsideration. On February 27, 1991, appellant filed another petition to vacate or set aside his conviction in which he again asserted ineffective assistance of counsel. Appellant followed this motion with an April 14, 1992 motion for judgment on the pleadings.

After repeated attempts by appellant to obtain a final judgment in this matter, on November 9, 1992, yet another judge in the trial court finally issued findings of fact and conclusions of law, followed by a judgment entry filed December 2, 1992, overruling appellant's petition for postconviction relief. Appellant then commenced the instant appeal.

Appellant now raises the following assignments of error:

"First Assignment of Error

"The trial court erred in failing to impanel a new venire (or fashion another remedy) upon its determination that the state had not rebutted appellant's prima facie showing that his rights to equal protection and to an impartial jury drawn from a cross-section of the community had been violated by the state's exercise of its peremptory challenges to exclude all of the black venirepersons from the petit jury. Sixth and Fourteenth Amendments, United States Constitution: Article I, Sections 2, 5, and 10 Ohio Constitution.

"Second Assignment of Error

"If trial counsel is held to have waived the *Batson* issue, trial counsel rendered ineffective assistance in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 Ohio Constitution."

Appellant's first assignment of error is identical to his first assignment of error on direct appeal. In *Belcher*, this court found that the trial court did not err in ruling the *Batson* objection to have been untimely, in refusing to disregard counsel's waiver of that issue, and in failing to rule upon the merits. Thus, this court previously overruled appellant's first assignment of error as raised herein, and the matter is the law of the case. We therefore overrule appellant's first assignment of error.

Appellant's second assignment of error charges error in the trial court's determination regarding his claim of ineffective assistance of counsel. As this court stated in our decision on appellant's direct appeal:

"To show ineffective assistance of counsel, the defendant must prove that counsel was incompetent and that that incompetence prejudiced him. In *Strickland v. Washington* (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], the United States Supreme Court detailed a two-part test:

" 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable.' *Id. at* 687 [104 S.Ct. at 2064, 80 L.Ed.2d at 693]." *Belcher* at 6.

At the hearing on appellant's postconviction relief petition, appellant presented four witnesses. Attorney Gerald Simmons was appellant's expert on the issue of whether appellant's trial counsel had given ineffective assistance, and testified that appellant's counsel should have objected when the prosecutor exercised his peremptory challenges to exclude all African–American jurors. Simmons stated that appellant's counsel had the obligation to object at the time the peremptory challenges were used, but that counsel did not object until the day after the jury was seated. According to Simmons, the trial judge's method of conducting voir dire required both counsel to voir dire the entire venire at once, then to adjourn to the judge's chambers, where each counsel would exercise his challenges. Simmons indicated that, under this system, the jurors were not in front of counsel when the challenges were exercised and it may not have been obvious to defense counsel, at the time peremptory challenges were exercised, that African–American jurors were being excluded. Nevertheless, Simmons testified that it should have been apparent to any lawyer who was paying attention to the makeup of the jury that the prosecutor was purposely using peremptory challenges to exclude African–American jurors. In any event, the absence of all African–American jurors should have been apparent when everyone reassembled in the courtroom just before the jury was sworn.

After appellant testified that he is African–American, and that the jurors who were excluded were also African–American, appellant's trial counsel testified that she had not realized until after the jury had been sworn in that the prosecutor had used his peremptory challenges to exclude all African–American jurors. She indicated that it had not been a tactical decision on her part to object when she did, and that when the jury was sworn she had not noticed that there were no African–American jurors. She stated that, because she had not seen the jurors as the peremptory challenges were being made, it had not occurred to her that the racial composition of the jury had been affected by the prosecutor's use of peremptory challenges.

The trial judge then testified that, at the time of the *Batson* objection, he asked the prosecutor why he had used his challenges in that manner. Based upon the prosecutor's answers, the trial judge testified that, if the *Batson* objection had been timely, it was more probable than not that he would have sustained it. He stated: "It was my belief at the time that the prosecutor did not have sufficient grounds to excuse those individuals on grounds other than race." However, the judge testified that he felt that the defense likewise would have wanted to excuse two of the same jurors and, therefore, he did not raise the *Batson* issue himself.

Addressing the allegation of ineffective assistance of counsel in light of this evidence and the prosecutor's explanation for the use of the challenges, the trial court determined that *Batson* had not been violated and so no prejudice arose from counsel's failure to timely object. The court stated that:

" * * * [W]hile the prosecutor excluded three prospective black jurors, the explanation of the use of such challenges was entirely plausible without regard to any racial considerations. While the trial court indicated on the trial record, and at the post conviction motion hearing an uncertainty as the ultimate decision regarding the belated challenge by the Defendant, the record does reveal the prosecutor did not challenge the excluded jurors in violation of the *Batson* decision. The fact the Defendant was charged with murder and convicted of a lesser offense with the assertion of self-defense, and the prosecutor's explanation of the use of preemptory [*sic*] challenges, leads this Court to the conclusion that Defendant has failed to show sufficient prejudice. * * * The record * * * reveals *Batson, supra* was not violated and therefore counsel's defaulting of the issue did not result in a prejudicial violation of rights of the Defendant. * * * "

The trial court's conclusion that appellant had not received ineffective assistance from his trial counsel hinged upon the court's finding that no racial discrimination had occurred in the prosecutor's use of his peremptory challenges.

 In evaluating the race-neutrality of an attorney's explanation for his use of peremptory challenges, the trial court had to "determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez v. New York* (1991), 500 U.S. 352, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406. Upon review of a claimed *Batson* violation, this court must give the findings of the trial court great deference, since those findings rest largely upon the court's evaluation of the prosecutor's credibility. *Id.* at ——, 111 S.Ct. at 1869, 114 L.Ed.2d at 409. As a result, we may reverse only upon a finding that the trial court's decision was clearly erroneous, that is, " 'so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process,' * * * or equal protection." *Id.* at ——, 111 S.Ct. at 1871, 114 L.Ed.2d at 411–412. To overturn the trial court's finding that there was no discriminatory intent, this court must be left with the definite and firm conviction that a mistake was committed. *Id.* at ——, 111 S.Ct. at 1872, 114 L.Ed.2d at 412–413.

Upon our review of the evidence, we cannot say, as the court did in *Hernandez*, that "[t]he trial court took a permissible view of the evidence in crediting the prosecutor's explanation." *Id.* at ——, 111 S.Ct. at 1872, 114 L.Ed.2d at 412. Considering the prosecutor's stated reasons for his use of the peremptory

challenges in this matter, the prosecutor did not sufficiently sustain his burden of proof to overcome appellant's prima facie showing of a racial motivation.

To the trial court's inquiry as to the prosecutor's rationale for the use of the peremptory challenges, the prosecutor responded that:

" * * * No. 2, Your Honor, was the most difficult to strike. The thing that made me reach that determination was that I spoke with the family of the victim, and I asked them what they thought. I had already made up my mind to strike I believe it was 6 and 10. I asked them what they thought, they thought I should strike her. The reason that I was unsure about her is that she is a gun owner, keeps a gun for home defense, and she has been through this police training and apparently she goes out once a month and shoots a gun. While I certainly don't have anything against that, it did make me wonder whether she would be more sympathetic than I wanted her to be for someone to go out and purchase a gun two days before a homicide and wait in the street. That's why I struck her.

" * * *

" * * * No. 6 is Steven Ford. I had high hopes for him for awhile because he knew a couple Columbus police officers and seemed to be a pretty good prospect. But when Miss Lesley was discussing some of his history, he related an incident that happened in the U.S. Air Force where he said he was out searching for a weapon or searching for a bomb on the base and his nervousness and apparently extreme anxiety in connection with that. He also said in response to Ms. Lesley's questioning about the killing or about the defendant testifying that he seemed to be very willing to believe what the defendant would have to say because he was there at the scene, he would know better than anybody what happened. Because of those two incidents I had decided to strike him, although initially I wasn't going to do it.

" * * *

" * * * Juror No. 10, she was the first person I made up my mind to strike because she was—she didn't seem to be paying a great deal of attention either to me or Ms. Lesley. She seemed to be making—I could see her making comments under her breath, seemed to take the whole thing pretty lightly, and for that reason I struck her."

The fact that the prosecutor used his peremptory challenges to exclude all three African–American jurors resulted in an inference that the prosecutor's stated reasons, although facially race-neutral, were actually a pretext for racial discrimination. See *Hernandez* at ——, 111 S.Ct. at 1868, 114 L.Ed.2d at 408. Moreover, the prosecutor's stated reasons for excluding jurors numbered two, six and ten were insufficient to rebut the inference of racial discrimination.

■ During voir dire, juror number two stated that for three years she had had a gun for defense and had gone through police training on how to use it. She stated that the gun was not loaded, admitting that she isn't really comfortable with firearms. Asked what she thought about a person who felt threatened and bought a gun to protect himself, she said that, if she felt threatened, she would naturally try to protect herself, stating her belief that "[i]f your life is threatened, then you have a right to defend yourself."

With regard to juror number two, the prosecutor said he decided to strike her because her gun ownership and interest in self-defense might make her more sympathetic to appellant, who similarly had purchased a gun and was claiming self-defense. However, the prosecutor more reasonably could have determined that the juror's obvious interest in guns and self-protection would have made her sympathetic toward the victim, rather than biased toward appellant. The fact that the prosecutor admitted that he was uncertain about whether to exclude this juror, and that he asked the victim's family for guidance, suggests the weakness of his race-neutral basis for his decision to strike the juror, and does not adequately rebut the *Batson* presumption established by appellant.

■ Juror number six, an employee of the city of Columbus, said he knew two Columbus police officers and two Franklin County sheriff's deputies. He stated that he had familiarity with guns due to having been in the Air Force, but that he did not own a weapon and felt there are other ways to protect oneself besides owning a gun. Nevertheless, he admitted that he could put himself in the position of a person who felt there was no other choice but to own a gun, and that he felt strongly about defending himself, primarily because of an experience he had while stationed in Spain in which he was asked to assist in investigating a bomb scare on his base. Juror number six said that, because appellant had been at the scene of the crime, he should know exactly what went on, and that possibly appellant could be a very good witness. These comments were not explored further.

Regarding juror number six, the prosecutor's stated reason seemed to suggest that this juror would have been too nervous to hear the case due to his experiences while in the military, and would have, in any event, been biased toward appellant. While this juror's demeanor cannot be part of the record, there is nothing in his responses to suggest that his military experiences created a nervous problem or that he demonstrated such a degree of anxiety that he would not be a good juror. Juror six also indicated there were more appropriate means for self-protection than owning a gun, a response that would suggest he would be a good prospective juror for the state where the case to be tried involved a claim of self-defense. Other than vaguely alluding to the juror's comment that appellant would make a good witness because he had been at the

scene of the crime, the prosecutor's explanation did not relate to the particular case to be tried. See *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88 (prosecutor must articulate a neutral explanation related to the particular case to be tried).

■ Juror number ten indicated that, although her home had been burglarized, it would not affect how she would view the evidence in this case. She said she knew a Columbus police officer, and had had experience as a juror during a criminal drug trial, although the case never went to the jury. She stated that: "I feel if I'm sitting here, I got to do what's best no matter what." Regarding people keeping guns at home for protection, she said that she had three children and that if she had to protect herself she would do her best, but she had no firearms in her home.

The prosecutor's stated reason for striking juror number ten was also unsupported, since the prosecutor did not specifically refer to anything this juror said or did. The prosecutor stated that juror number ten did not seem to pay much attention either to himself or to defense counsel, and appeared to be making comments under her breath. Although he claimed that the juror "seemed to be" taking voir dire "pretty lightly," he did not indicate exactly what she said or did not say to give him that impression. Again, even though the juror's demeanor cannot be assessed by this court, a review of the voir dire shows that the answers given by juror number ten were thoughtful and responsive to the questions and do not demonstrate a casual attitude toward the process. The information provided by the prosecutor regarding juror number ten simply was not particular enough to justify the use of the peremptory challenge.

Also relevant to the *Batson* issue was the prosecutor's failure to strike juror number four, a Caucasian male who admitted he owned a gun for self-protection. Juror number four stated that he had never used the gun because he was threatened, but that he believed if a person's life is threatened he has a right to shoot another person in self-defense. The background of juror number four was strikingly similar to juror number two, an African–American who was challenged. In this instance, the fact that the prosecutor did not use his fourth challenge on juror number four, a Caucasian venireperson having the same characteristic of owning a gun for self-defense as was admitted by juror number two, an African–American actually challenged, helped to support a finding of a racially-motivated use of the three peremptory challenges. We also note that, had the prosecutor exercised his fourth challenge, the next prospective juror to be seated was also an African–American.

With regard to the significance of a prosecutor's failure to challenge a Caucasian juror, it has been held that a prosecutor's explanation for striking an African–American juror does not pass muster where a similarly situated Cauca-

sian juror was not stricken. *Garrett v. Morris* (C.A.8, 1987), 815 F.2d 509, 513–514, certiorari denied, *Jones v. Garrett* (1987), 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191. Disparate treatment of venirepersons giving similar answers during voir dire is a factor which "weigh[s] heavily against the legitimacy of any race-neutral explanation." *Slappy v. Florida* (Fla.App.1987), 503 So.2d 350, 355, certiorari denied (1988), 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909.

Even if the trial court correctly found that the prosecutor's race-neutral explanation for striking jurors numbered six and ten was plausible, that conclusion was erroneous with regard to juror number two. There was nothing to indicate that juror number two's gun ownership and her attitude toward self-defense would have made her biased in favor of appellant. In addition, even if those characteristics supported the use of the peremptory challenge against her, the same could be said of juror number four, who was Caucasian and was not stricken.

■ The striking of a single African–American juror without an adequate race-neutral explanation can result in a *Batson* violation, even where valid reasons exist for striking other African–American jurors. See *United States v. Clemons* (C.A.3, 1988), 843 F.2d 741, 747, certiorari denied (1988), 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73. Thus, even if only one of the peremptory challenges was utilized in a discriminatory fashion, a violation of appellant's constitutional rights occurred.

The facts before us demonstrate that the prosecutor exercised three of his peremptory challenges to remove all African–Americans from the venire, raising an inference that the prosecutor used his peremptory challenges to exclude these venirepersons from the jury on account of their race. Appellant thus established a prima facie case. Moreover, the trial court's conclusion that the prosecutor's reasons were race-neutral and "entirely plausible" was clearly erroneous, given that there was little evidence to support this conclusion. Thus, the inference was raised that the prosecutor's stated rationale for the use of the strikes was pretextual. Our review of the explanation given by the prosecutor leaves us with the definite and firm conviction that the trial court was mistaken in concluding that the jury was untainted by racial discrimination.

The trial court found that a *Batson* objection, if timely made, would not have been sustained, and we conclude that decision was in error, especially since the actual trial judge testified he probably would have sustained a timely objection. It follows that, by failing to register a *Batson* objection prior to the swearing-in of the jury, appellant's counsel failed to assert a meritorious claim in a timely manner. It can thus be said that appellant's counsel made an error so serious as not to be functioning as counsel at that time and that, as a result, appellant was deprived a fair trial. Appellant's second assignment of error is sustained.

Appellant's first assignment of error is overruled and his second assignment of error is sustained. We reverse the judgment of the trial court and remand this cause for further proceedings consistent herewith.

*Judgment reversed and cause remanded.*

WHITESIDE and JOHN C. YOUNG, JJ., concur.