OPINION
{¶ 1} Defendant-appellant Ross M. Zwelling appeals his conviction and sentence entered by the Muskingum County Court of Common Pleas, on one count of having a weapon under disability, and one count of aggravated menacing, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 21, 2004, the Muskingum County Grand Jury indicted appellant on one count of carrying a concealed weapon, in violation of R.C. 2923.12 (A)(2); one count of improper handling of a firearm in a motor vehicle, in violation of R.C.2923.16 (B); one count of having a weapon under disability, in violation of R.C. 2923.13 (A)(3); and one count of aggravated menacing, in violation of R.C. 2903.21 (A). Appellant appeared before the trial court for arraignment on June 29, 2005, at which time he entered pleas of not guilty to the charges contained in the Indictment.
 {¶ 3} The matter proceeded to jury trial on August 30, 2005. During voir dire, the State used its second peremptory challenge to excuse prospective juror Yvonne Adams, the only African American in the venire. Dennis McNamara, appellant's trial counsel, asked the judge to approach the bench and objected to her removal on the basis of Batson v. Kentucky (1986),476 U.S. 79. In response, the State explained, "there are portions during the questioning when that particular juror would close her eyes for a long period of time, appear to not be paying attention, or appear to be disinterested in what the conversations were. The State's position is that's not an appropriate individual to sit on this jury regardless of what their race, creed, or ethnic origins are." Tr. at 92-93. The trial court subsequently overruled appellant's objection.
 {¶ 4} Patrolman Michael Patrick of the Zanesville Police Department was the first witness to testify for the State. Ptl. Patrick recalled he was on road duty at approximately 7:00 pm on September 13, 2004, when he was dispatched to Mike's Brew Thru on Hall Avenue to investigate a situation involving one person pointing a gun at another person. When the patrolman arrived, he approached a vehicle and observed three individuals "running around, kind of distraught" and "very nervous and fidgety". Tr. at 138. Ptl. Patrick calmed the three people and obtained their basic information. He separated the individuals and questioned them one by one. Two of the three individuals identified appellant as the person who had pulled the gun. The same two persons, Adam Brookover and John Bowers, also provided the officer with a description of the vehicle appellant was driving. Brookover and Bowers each told Ptl. Patrick they had seen appellant with a gun. The third individual, Kristine Kennedy, told the officer she had not seen a gun.
 {¶ 5} Adam Brookover, who was twenty-one at the time of the trial, testified he has lived his entire life in Zanesville and had been friends with appellant for approximately ten years. Brookover testified he last saw appellant on the night of September 13, 2004. Brookover recalled he was in the back passenger's seat of Bowers' vehicle, and Bowers was driving and Kennedy, his girlfriend, was in the front passenger's seat. As the vehicle crossed the Y Bridge, Brookover heard honking and looked back. He saw appellant motioning them to pull over. Bowers pulled the vehicle into a parking lot on Linden Avenue. Appellant also pulled into the parking lot and exited his vehicle. Brookover stated appellant approached the driver's side of Bower's car, opened the door, lifted the seat up, and removed a gun from his waistband. Appellant pulled the slide back on the gun and pointed it into Brookover's leg. Appellant began to yell at Brookover about money Brookover owed him. Brookover testified he pushed the gun away from his leg, but appellant pressed it back into his leg. When Brookover pushed the gun away a second time, appellant pointed it in the general direction of Brookover's face. During this time, appellant told Brookover not to play with his (appellant's) money and to straighten out his (Brookover's) life. Appellant removed a hat Brookover was wearing and returned to his vehicle.
 {¶ 6} Brookover testified he, Bowers and Kennedy discussed whether to call the police. After approximately five or ten minutes, the three agreed to report the incident. The police arrived quickly to the scene. Although Brookover conceded he was still shaken up from what had just transpired, he believed his recollection of the events as detailed to the police was accurate. Brookover further noted appellant had shown him a.45 caliber Glock gun a week or two prior to the incident. The gun appellant pointed at Brookover on September 13, 2004, looked identical to the one appellant had previously shown him.
 {¶ 7} John Bowers testified he was driving his car with his girlfriend, Kristine Kennedy, and Adam Brookover as passengers on September 13, 2004. As the group was traveling on Linden Avenue, Brookover told Bowers to pull over because appellant was waving them down. When Bowers looked in his rearview mirror, he saw appellant driving in a vehicle behind him. Bowers pulled into a parking lot near the credit union. Appellant pulled his vehicle up next to him. Bowers testified appellant exited his vehicle, came over to his car door, opened the door, and pulled out a gun. Bowers recalled appellant did not speak to him, but began to yell at Brookover. Bowers noted appellant removed the gun from his waistband, waived it around, and pointed it towards Brookover. Bowers stated Brookover tried to push the gun away, but appellant continued to point it at him. At the end of the incident, the group proceeded toward Kennedy's house. Bowers asked Brookover if Brookover wanted Bowers to call the police to which Brookover responded he did. Bowers pulled into the parking lot of Mike's Brew Thru and dialed 911.
 {¶ 8} Kristine Kennedy testified she, John Bowers, and Adam Brookover were traveling in Bowers' vehicle on September 13, 2004, when she heard the honking of a horn from another vehicle. Kennedy recalled Brookover asked Bowers to pull over, and Bowers pulled into a nearby parking lot. Kennedy testified appellant exited his vehicle, approached the driver's side of the Bowers vehicle, opened the door and wedged himself behind the driver's seat. When appellant entered the car, he started yelling. Kennedy stated she heard "click, click" and exited the vehicle. Kennedy stated she recognized the "click, click" sound as the sound of a gun. Once she exited the vehicle, Kennedy walked away and stood by a parked van of a heating and cooling company. Kennedy noted when appellant entered Bower's vehicle, he was yelling about a hat, but she could not hear any further conversation once she walked away. When appellant returned to his vehicle, she returned to Bowers' vehicle and the three left the area. As Bowers drove across Memorial Bridge, he asked Brookover if he wanted to call the police. Bowers drove into the parking lot of Mike's Brew Thru and called 911.
 {¶ 9} At the completion of the State's case, appellant made an oral Crim. R. 29 motion for acquittal. After hearing arguments from both parties, the trial court sustained the motion with respect to counts one and two of the Indictment, but overruled the motion as to counts three and four.
 {¶ 10} Clint Bowen testified on appellant's behalf. Bowen recalled he and appellant were driving around on September 13, 2004, when appellant mentioned he saw Adam Brookover in another vehicle. Appellant followed the vehicle in which Brookover was a passenger and pulled into the parking lot into which that car had driven. Bowen testified appellant exited the vehicle, spoke with Brookover, returned to the vehicle, and they left the area. While they were driving, appellant received a phone call informing him the police were looking for him. Appellant drove Bowen to his residence. Bowen noted appellant wanted to talk to Brookover about money Brookover owed him. Bowen recalled appellant was only out of his vehicle for a few minutes. When appellant returned to the car, he did not say anything about what had happened or make any comments to Bowen. Bowen stated he could tell from appellant's expression he had argued with someone. Bowen testified he did not see a gun on or about appellant's person on the day of the incident.
 {¶ 11} Howard Zwelling, appellant's father, also testified on appellant's behalf. Appellant resided in his father's home. Mr. Zwelling testified, in September, 2004, he did not have guns at his home and had not had them for some time. Mr. Zwelling acknowledged he bought appellant a 12-gauge shotgun for deer hunting when appellant was fourteen or fifteen years old. The witness noted appellant had not had the shotgun for a long time. Although Mr. Zwelling acknowledged he personally had once owned a handgun, he stated he did not keep it for very long and had given it to his ex-wife a year or a year and a half before she passed away, which was a couple of years before September, 2004.[1] Mr. Zwelling reiterated, to his knowledge, as of September, 2004, there were no firearms or handguns in his home. On cross-examination, the prosecutor asked Mr. Zwelling repeated questions relative to whether appellant kept any guns and whether appellant had purchased or been given any guns. Mr. Zwelling answered all of the questions in the negative. The prosecutor asked Mr. Zwelling if he had ever given appellant his (Mr. Zwelling's) handgun in order for appellant to take it to be repaired. Mr. Zwelling responded, "No". He also noted he did not allow appellant to sell the handgun. When asked about a conversation with Larry Brocklehurst, Mr. Zwelling could not recall telling Brocklehurst appellant had taken the handgun Mr. Zwelling owned to have it repaired, or telling Brockehurst the gun repair man purchased the gun from appellant. Mr. Zwelling could not testify as to the extent of appellant's knowledge of guns. Upon conclusion of Howard Zwelling's testimony, the defense rested.
 {¶ 12} On rebuttal, the State called Larry Brocklehurst. Brocklehurst testified he was a detective with the Muskingum County Sheriff's Office on January 23, 1999. On that day, he spoke with Howard Zwelling as part of an investigation. Brocklehurst recalled he and Mr. Zwelling discussed a nine millimeter handgun Mr. Zwelling had purchased prior to the January 23, 1999 conversation. According to Brocklehurst Mr. Zwelling told him appellant had sold the gun. Brocklehurst recalled Mr. Zwelling's telling him appellant was in possession of the gun because "[h]e had purchased it." Tr. Vol II at 337.[2]
 {¶ 13} After hearing all the evidence and deliberations, the jury found appellant guilty of having a weapon while under disability and aggravated menacing. The trial court deferred sentencing until the completion of a pre-sentence investigation. The trial court conducted a sentencing hearing on October 18, 2005. The trial court sentenced appellant to a five year term of incarceration on the weapons under disability count, and six months of local incarceration on the aggravated menacing charge. The trial court ordered the sentences to run concurrently. The trial court imposed a fine of $1000 and ordered appellant pay the costs of the prosecution. The trial court memorialized the sentence via Entry filed October 28, 2005.
 {¶ 14} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 15} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE PROSECUTION'S PREEMPTING OF PROSPECTIVE JUROR YVONNE ADAMS. [TR., 91-93].
 {¶ 16} "II. THE TRIAL COURT ERRED WHEN IT PERMITTED OFFICER PATRICK TO TESTIFY AS TO THE CONTENT OF THE STATEMENTS THAT THE WITNESSES MADE TO HIM. [TR. 139-41, 150-151].
 {¶ 17} "III. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL AS TO THE THIRD COUNT. [TR., 281, 378].
 {¶ 18} "IV. THE TRIAL COURT ERRED WHEN IT ADMITTED THE REBUTTAL TESTIMONY OF LARRY BROCKLEHURST. [TR., 336].
 {¶ 19} "V. THE TRIAL COURT'S IMPOSITION OF THE MAXIMUM PENALTY FOR THE FELONY OF HAVING A WEAPON UNDER A DISABILITY WAS CONTRARY TO LAW. [10-18-05, TR., 10].
 {¶ 20} "VI. THE COMBINED EFFECT OF ALL OF THE ERRORS IDENTIFIED HEREIN DEPRIVED APPELLANT OF DUE PROCESS AND A FAIR TRIAL."
 I {¶ 21} In his first assignment of error, appellant maintains the trial court erred in overruling his objection to the prosecutor's exercising one of its peremptory challenges on prospective juror Yvonne Adams, the only African American in the venire.
 {¶ 22} In Batson v. Kentucky (1986), 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court held the Equal Protection Clause of the United States Constitution precludes purposeful discrimination by the state in its exercise of its peremptory challenges as to exclude members of minority groups from service on petit juries. Id. at 89; State v.Ingram, Franklin App. No. 01AP-1343, 2002-Ohio-5012, at ¶ 4.Batson applies even when a criminal defendant is not the same race as the excluded jurors. Id.; Powers v. Ohio (1991),499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. The ultimate burden of persuasion is on the defendant to show that the state used a peremptory challenge in a discriminatory manner. Ingram, at ¶ 17, citing State v. Gowdy (2000), 88 Ohio St.3d 387,727 N.E.2d 579.
 {¶ 23} A three-step burden shifting procedure is used to determine whether the state's peremptory challenge is race based. First, the defendant, as the proponent of the challenge, must make a prima facie showing that the state purposefully discriminated in exercising a peremptory challenge to remove a prospective juror. To make a prima facie case of purposeful discrimination, the defendant must demonstrate (1) that members of a cognizable racial group were peremptorily challenged; and (2) that the facts and any other relevant circumstances raise an inference that the state used the peremptory challenges to exclude jurors on account of their race. State v. Hill (1995),73 Ohio St.3d 433, 444-445, 653 N.E.2d 271.
 {¶ 24} The burden then shifts to the state to provide a race neutral-explanation. Id. at 445, 653 N.E.2d 271. The neutral reason given by the state need not rise to the level justifying exercise of a challenge for cause. Batson, at 97. In fact, the United States Supreme Court has held that the second step of this process does not demand an explanation that is persuasive, or even plausible. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Purkett v. Elem (1995), 514 U.S. 765, 768,115 S.Ct. 1769, 131 L.Ed.2d 834, quoting Hernandez v. New York
(1991), 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395
(plurality opinion).
 {¶ 25} Finally, the trial court must determine if the defendant has established purposeful discrimination. Batson, at 98. The United States Supreme Court noted in Hernandez that "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." Hernandez, at 365. This Court must give the findings of the trial court great deference, since those findings rest largely upon the court's evaluation of the prosecutor's credibility. Id.; State v. Bannerman (Mar. 4, 1997), Franklin App. No. 96APA06-791. As a result, we may reverse only upon a finding that the trial court's decision was clearly erroneous, that is, so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process or equal protection. State v. Hernandez
(1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310. To overturn the trial court's finding that there was no discriminatory intent, this Court must be left with the definite and firm conviction a mistake was committed. State v. Belcher (1993),89 Ohio App.3d 24, 30, 623 N.E.2d 583. The establishment of a prima facie case becomes moot once the prosecutor offers a race-neutral explanation for the peremptory challenge and the trial court rules on the ultimate issue of discrimination. Hernandez v. NewYork, supra, at 359; State v. White (1999), 85 Ohio St.3d 433,437, 709 N.E.2d 140.
 {¶ 26} During the course of the voir dire, the State used its second peremptory challenge to excuse prospective juror Yvonne Adams. Appellant raised a Batson objection. In response, the State noted, during portions of the questioning, the prospective juror would close her eyes for a long period of time, did not appear to be paying attention and appeared to be disinterested in the conversations. The trial court determined the State's explanation was race-neutral and rejected appellant's claim. Once the trial court accepted the State's nondiscriminatory reason, the burden shifted back to appellant to demonstrate the prosecutor's use of the challenge was racially motivated. Appellant did not ask the trial court to voir dire the juror.
 {¶ 27} Although the State's reason for exercising the challenge was based on speculation, we find appellant has failed to affirmatively demonstrate any racial motivation on the part of the State. Additionally, upon review of the entire record, we find no evidence demonstrating such motivation on the part of the State. Having failed to meet his burden and with no affirmative record demonstration, we find the trial court did not err in overruling appellant's objection to the prosecutor's use of its second peremptory challenge.
 {¶ 28} Appellant's first assignment of error is overruled.
 II {¶ 29} In his second assignment of error, appellant contends the trial court erred in permitting Officer Michael Patrick to testify as to the content of the statements made to him by the eyewitnesses, Adam Brookover, John Bowers, and Kristine Kennedy.
 {¶ 30} Evid.R. 801(D)(1)(b) provides, impertinent part:
 {¶ 31} "A statement is not hearsay if: (1) Prior statementby witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."
 {¶ 32} At trial, appellant theorized the three witnesses fabricated their story immediately after the incident, but prior to providing Officer Patrick with their initial statements. Appellant submits Officer Patrick's testimony recalling the statements made to him by the witnesses was improperly used by the State to bolster the credibility of those witnesses. Appellant explains the fact he contended the witnesses lied did not open the door for the State to place into evidence the initial statements made by them to Officer Patrick; therefore, should not have been admitted pursuant to Evid.R. 801 (D)(1)(b).
 {¶ 33} Appellant refers to two specific portions of Officer Patrick's testimony which he submits should not have been admitted. We shall address each in turn.
 {¶ 34} The direct examination of Officer Patrick proceeded as follows:
 {¶ 35} "Q. And did you ask them what had happened?
 {¶ 36} "A. Not initially. At first, initially, I got all their information. First I found out who I was talking to.
 {¶ 37} "Q. Okay. Once you did that, did you ask them what had happened?
 {¶ 38} "A. Right. I separated them and pulled them aside one by one.
 {¶ 39} "Q. Were they able to tell you what happened?
 {¶ 40} "A. Yes, they were.
 {¶ 41} "Q. What was it that they told you had happened?
 [FIRST OBJECTION] {¶ 42} Mr. McNamara: "I object, Your Honor, to the hearsay.
 {¶ 43} The Court: "Objection sustained.
 {¶ 44} "* * *
 {¶ 45} Mr. Welch: "May we have that considered as an excited utterance? The officer testified they were distraught, that he had been dispatched off of a 9-1-1 call.
 {¶ 46} The Court: "The objection is sustained.
 {¶ 47} "* * *
 {¶ 48} By Mr. Welch:
 {¶ 49} "Q. When you spoke with these individuals, were they able to identify the person that had pulled the gun?
 {¶ 50} "A. Two of the three were, yes.
 [SECOND OBJECTION] {¶ 51} Mr. McNamara: "I object. I object, Your Honor, to him including it in his question, the fact — * * * the fact that someone pulled a gun.
 {¶ 52} The Court: "Overruled. You may answer.
 {¶ 53} "A. Two of the three were, yes.
 {¶ 54} "Q. And who did they indicate was the individual that had pulled the gun?
 {¶ 55} "A. Ross Zwelling.
 {¶ 56} "Q. And did anyone provide you with the description of the car that the suspect was in?
 {¶ 57} "A. Again, two of the three were.
 {¶ 58} "Q. And who were the individuals that provided you with the description?
 {¶ 59} "A. Adam Brookover and also a John Bowers.
 {¶ 60} "Q. You said there were three people there. Correct?
 {¶ 61} "A. Yes.
 {¶ 62} "Q. Who was the third person?
 {¶ 63} "A. It was a Kristine Kennedy.
 {¶ 64} "Q. Okay. Were you able to determine who was situated where within the car?
 {¶ 65} "A. Yes, I was.
 {¶ 66} "Q. And could you tell us where those individuals were?
 [THIRD OBJECTION] {¶ 67} Mr. McNamara: "I object, Your Honor. That also would be hearsay. He's not asking where they were when he arrived but where they had been earlier.
 {¶ 68} Mr. Welch: "I'll rephrase, Your Honor.
 {¶ 69} The Court: "Well, he can answer to the extent it's part of his investigation.
 {¶ 70} By Mr. Welch:
 {¶ 71} "Q. When you arrived, were the individuals still in the car?
 {¶ 72} "A. No, they were not.
 {¶ 73} "Q. Okay. Now, once you had determined who those individuals were, you indicated you separated them out, spoke to them. Correct?
 {¶ 74} "A. Yes.
 {¶ 75} "Q. Okay. You said that Mr. Brookover provided the description of the car?
 {¶ 76} "A. Yes, he did.
 {¶ 77} "Q. Who else provided the description?
 {¶ 78} "A. Mr. Bowers.
 {¶ 79} "Q. And what was the description that was provided?
 {¶ 80} "A. of the vehicle or the suspect?
 {¶ 81} "Q. The vehicle.
 {¶ 82} "A. The vehicle was a tan Lexus.
 {¶ 83} "Q. After receiving this information, what did you do?
 {¶ 84} "A. I advised my dispatch so they could allow the other units to know to be on the lookout for this vehicle in the area.
 {¶ 85} "Q. And you did that immediately?
 {¶ 86} "A. Yes, I did."
 {¶ 87} Tr. Vol. I at 138-141.
 {¶ 88} With respect to the first objection made by appellant, we note the trial court sustained the objection; therefore, we find no error.
 {¶ 89} With respect to the second objection, we find Officer Patrick's answer was not hearsay, but rather part of the officer's investigation. An officer's testimony concerning the reasons for his or her actions during an investigation generally is not considered hearsay, because, rather than to prove the truth of the statement made to the officer, it is offered to show why the officer as the testifying witness acted in a particular manner. State v. Williams (1996), 115 Ohio App.3d 24,684 N.E.2d 358; State v. Messer (1995), 107 Ohio App.3d 51,667 N.E.2d 1022; cf., Crawford v. Washington (2004), 541 U.S. 56,124 S.Ct. 1354, 158 L.Ed.2d 177.
 {¶ 90} The trial court overruled appellant's third objection, permitting Officer Patrick to answer to the extent such was part of his investigation. Assuming, arguendo, the trial court's reasoning was incorrect, Officer Patrick never answered the question as posed; therefore, there was no prejudice. The prosecutor rephrased the question to address appellant's concern, clarifying the question was directed to the location of the witnesses when Officer Patrick arrived. Appellant did not object to the rephrased question, and the answer was not hearsay. Appellant did not raise any further objections during this period of the direct examination.
 {¶ 91} We turn to the second portion of the testimony. On redirect, the questioning of Officer Patrick proceeded as follows:
 {¶ 92} "Q. Mr. McNamara had asked you upon your — your arrival that you spoke with the individuals about — about the weapon; is that correct?
 {¶ 93} "A. Yes, I did.
 {¶ 94} "Q. And what was it that they told you had happened?
 {¶ 95} Mr. McNamara: "I object.
 {¶ 96} The Court: "Overruled.
 {¶ 97} "* * *
 {¶ 98} "A. I'm sorry. As to what happened?
 {¶ 99} "Q. When you arrived on the scene, you asked them what happened. Can you please tell the ladies and gentlemen of the jury what they told you had happened?
 {¶ 100} "A. That Ross Zwelling had flagged them down. They had pulled over somewhere around the laundromat on Linden Avenue, and that Ross approached the driver's side of the vehicle, opened up the door, pulled a small frame black pistol handgun out of his waistband, charged the weapon by pulling the slide back, started pointing it in the backseat toward Mr. Brookover.
 {¶ 101} "* * *
 {¶ 102} "Q. Okay. Did John Bowers tell you that he saw a weapon?
 {¶ 103} "A. Yes, he did.
 {¶ 104} "Q. Okay. And do you recall if Kristine Kennedy said she saw a weapon?
 {¶ 105} "A. No. She didn't see the weapon.
 {¶ 106} "Q. Okay. That's your recollection of what she told you. Correct?
 {¶ 107} "A. Correct.
 {¶ 108} "Q. Okay. And Adam Brookover explained to you what exactly?
 {¶ 109} "A. That as Ross pulled the weapon out of his waistband, slid the slide back on the gun, * * *"
 {¶ 110} Tr. Vol. I at 150-151.
 {¶ 111} We find the aforementioned testimony to be hearsay and its admission error, but harmless. The three eyewitnesses subsequently testified consistently with Officer Patrick's account of their statements. Although appellant argues this testimony of Officer Patrick should not have been admitted because it was an improper vouching for the credibility of the witnesses, we find it was not vouching, but cumulative to the witnesses' direct testimony.
 {¶ 112} Appellant's second assignment of error is overruled.
 III {¶ 113} In his third assignment of error, appellant asserts the trial court erred in overruling his motion for acquittal relative to the charge of having a weapon under disability. Specifically, appellant argues the State failed to prove beyond a reasonable doubt the gun in question was operable.
 {¶ 114} Crim. R. 29(A) requires a trial court, upon motion of the defendant, to enter a judgment of acquittal of one or more offenses charged in an indictment if the evidence is insufficient to sustain a conviction of the offense or offenses. However, a trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. On appeal of the denial of a Crim. R. 29(A) motion, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Williams, 74 Ohio St.3d 569, 576,1996-Ohio-91, 660 N.E.2d 724, citing State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 115} Appellant was convicted of having a weapon under disability, in violation of R.C. 2923.13(A)(3), which provides: "Unless relieved from disability as provided in section 2923.14
of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."
 {¶ 116} R.C. 2923.11(B)(1) defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Subsection (B)(2) provides: "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." The Ohio Supreme Court has held "where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." State v. Thompkins, 78 Ohio St.3d 380, 384,1997-Ohio-52, superseded by state constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355.
 {¶ 117} Adam Brookover and John Bowers both testified appellant brandished a firearm in a threatening manner. Appellant approached Brookover and began yelling. Thereafter, appellant pulled a gun from his waistband, slid the slide back, and pointed it into Brookover's leg. We find this evidence is sufficient to establish an implicit, if not explicit, threat to discharge the gun. Accordingly, we find the State met its burden of proof the firearm was operable, and the trial court did not err in overruling appellant's motion for acquittal as to the charge of having a weapon under disability.
 {¶ 118} Appellant's third assignment of error is overruled.
 IV {¶ 119} In his fourth assignment of error, appellant challenges the trial court's admission of the rebuttal testimony of Larry Brocklehurst. Appellant explains Brocklehurst's testimony regarding a conversation he had with Howard Zwelling in 1999, about a pistol Howard Zwelling had given to appellant, had no connection to the charges contained in the indictment; therefore, should have been precluded as such was for impeachment purposes on a collateral issue.
 {¶ 120} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027.
 {¶ 121} Although debatably collateral in the sense the rebuttal testimony related to possession of a weapon approximately 5 years before the subject complaint, we, nevertheless, find the testimony of Brocklehurst served to impeach Mr. Zwelling's testimony appellant never had possession of the handgun and appellant did not sell the handgun. Given Mr. Zwelling's affirmative testimony there were no guns in the house at the time of the incident, we find the trial court did not abuse its discretion in admitting Brocklehurst's rebuttal testimony. Howard Zwelling testified he owned a handgun, but had given it to his ex-wife several years prior to 2004. Defense elicited this testimony to support its contention appellant did not have a gun as his father would have been aware of such possession. Brocklehurst's rebuttal testimony attacks Mr. Zwelling's credibility. Arguably it may also be of some relevance to prove appellant's knowledge as to how to render a handgun operable.
 {¶ 122} Appellant's fourth assignment of error is overruled.
 V {¶ 123} In his fifth assignment of error, appellant challenges the trial court's imposition of a maximum sentence. Appellant predicates this assignment of error on two grounds. First, appellant submits the trial court could not impose a maximum sentence without factual findings determined by a jury or an admission by appellant pursuant to Blakely v. Washington
(2004), 542 U.S. 296. Additionally, appellant asserts the trial court could not impose a maximum sentence without making the requisite statutory findings.
 {¶ 124} Pursuant to the Ohio Supreme Court's recent decision in State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, we find appellant's sentence is deemed void. Accordingly, we vacate the sentence and remand the matter to the trial court for a new sentencing hearing.
 VI {¶ 125} In his final assignment of error, appellant asserts he was denied a fair trial due to the cumulative effect of the errors occurring during trial.
 {¶ 126} Under the doctrine of cumulative error, a judgment may be reversed when the cumulative effect of errors deprives a defendant of his constitutional rights, even though such errors, standing alone, are not prejudicial. State v. DeMarco (1987),31 Ohio St.3d 191, 196-197.
 {¶ 127} Having found no prejudicial errors during the course of the trial, we find appellant was not denied a fair trial.
 {¶ 128} Appellant's sixth assignment of error is overruled.
 {¶ 129} The judgment of the Muskingum County Court of Common Pleas is affirmed in part and vacated in part and remanded for a new sentencing hearing.
Hoffman, J. Wise, P.J., concur, and Edwards, J. concurs separately.
[1] According to this testimony, an approximate time frame for when Mr. Zwelling gave his ex-wife the handgun would be 2000, or 2001.
[2] It is unclear whether "he" is referring to Mr. Zwelling or appellant.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Muskingum County Court of Common Pleas is affirmed in part and vacated in part and remanded for a new sentencing hearing. Costs to be divided equally.