OPINION *Page 2 
{¶ 1} Defendant-appellant Ross Zwelling appeals the July 18, 2006 Entry of the Muskingum County Court of Common Pleas, which resentenced him pursuant to this Court's remand in State v. Zwelling, Muskingum App. No. CT05-0048, 2006-Ohio-2954. Appellant also appeals the trial court's August 17, 2006 Judgment, which denied his motion for a new trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 21, 2004, the Muskingum County Grand Jury indicted Appellant on one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2); one count of improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(B); one count of having a weapon under disability, in violation of R.C. 2923.13(A)(3); and one count of aggravated menacing, in violation of R.C. 2903.21(A). The matter proceeded to jury trial on August 30, 2005. Upon the completion of the State's case, Appellant made an oral Crim. R. 29 Motion for Acquittal. After hearing arguments from both parties, the trial court sustained the motion with respect to count one of the indictment, carrying a concealed weapon, and count two of the indictment, improper handling of a firearm in a motor vehicle. The trial court overruled the motion as to the remaining two counts.
 {¶ 3} The defense presented its case, followed by one rebuttal witness called by the State. After hearing all the evidence and deliberations, the jury found Appellant guilty of having a weapon while under disability and aggravated menacing. The trial court sentenced Appellant to an aggregate term of five years imprisonment, plus fines *Page 3 
and costs. Appellant appealed his conviction and sentence to this Court, which affirmed the conviction, but vacated his sentence and remanded the matter to the trial court for resentencing in accordance with State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856. See, State v. Zwelling, supra.
 {¶ 4} Upon remand, Appellant filed a sentencing memorandum, arguing various propositions of law in support of his position he should be resentenced to a minimum term sentence. The trial court conducted the re-sentencing hearing on July 6, 2006. The trial court sentenced Appellant to an aggregate term of imprisonment of four years. The trial court memorialized the sentence via Entry filed July 18, 2006. Appellant filed a timely notice of appeal from this entry.
 {¶ 5} Appellant also filed a motion for new trial based upon newly discovered evidence. The trial court conducted a hearing on Appellant's motion for new trial on July 31, 2006. After receiving evidence and affidavits, and hearing testimony and arguments, the trial court granted the State leave to file additional affidavits, and granted Appellant leave to reply thereto. The trial court took the matter under advisement. Via Judgment on Motion for New Trial, the trial court overruled Appellant's request, concluding "There is little likelihood, and clearly no strong probability, that such testimony would change the result upon retrial * * * [and] movant has failed to produce evidence sufficient to justify this court in granting a new trial." Appellant filed a timely notice of appeal from this judgment entry.
 {¶ 6} It is from the July 18, 2006 Entry, and August 17, 2006 Judgment on Motion for New Trial Appellant appeals, raising the following assignments of error: *Page 4 
 {¶ 7} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR A NEW TRIAL.
 {¶ 8} "II. THE TRIAL COURT ERRED, AS A MATTER OF LAW, WHEN IT APPLIED A SENTENCING SCHEME WHICH WAS NOT IN EFFECT AT THE TIME OF THE COMMISSION OF THE OFFENSES CONTAINED IN THE INDICTMENT.
 {¶ 9} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT IMPOSED A SENTENCE THAT WAS NOT CONSISTENT WITH SENTENCES IMPOSED [SIC] THE SAME OFFENSE COMMITTED BY SIMILARLY SITUATED OFFENDERS."
 I {¶ 10} In his first assignment of error, Appellant contends the trial court erred in overruling his motion for a new trial.
 {¶ 11} The granting of a new trial lies in the trial court's sound discretion. State v. Swanson, Ashland App. No. 02COA048, 2003-Ohio-16, at ¶ 7, citing State v. Petro (1947), 148 Ohio St. 505. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See, Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 12} Crim.R. 33 governs the granting of a new trial, and provides, in pertinent part:
 {¶ 13} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * *
 {¶ 14} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; * * * *Page 5 
 {¶ 15} "(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses." Crim. R. 33.
 {¶ 16} In his motion, Appellant set forth three bases which, he asserted warranted the granting of a new trial. Those bases were juror misconduct and the discovery of new evidence. Appellant subsequently withdrew the claim of juror misconduct. Appellant presented the affidavit of Brittany Smith, a friend of Kristine Kennedy, one of the State's witnesses, as well as an acquaintance of Adam Brookover and Johnny Bowers, also State's witnesses, to establish Brookover and Bowers lied at trial regarding Appellant's possessing a gun. At trial, Appellant contested the credibility of Kennedy, Brookover, and Bowers. Appellant contends Smith's affidavit strengthens this position. Appellant also submitted a letter from David Zehnder, an optometrist in Delaware, Ohio, who indicated he was in possession of the handgun once owned by Howard Zwelling. Appellant claims this evidence establishes Deputy Larry Brocklehurst's rebuttal testimony that Howard Zwelling told the detective in 1999, Appellant sold a .9mm handgun for him (Zwelling) was inaccurate. At trial, Howard *Page 6 
Zwelling testified there were no firearms or handguns in his home as of September, 2004, and he had not personally owned a handgun during the last three or four years.
 {¶ 17} In order to prevail on a Crim. R. 33(A) motion for a new trial on the ground of newly discovered evidence, the movant must demonstrate "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Hawkins (1993),66 Ohio St.3d 339, 350, quoting State v. Petro, supra.
 {¶ 18} In her affidavit attached to appellant's motion for new trial, Brittany Smith averred:
 {¶ 19} "1. My name is Brittany Smith. In August of 2005, I had the occasion of visiting my friend Kristen Kennedy of 925 Langdon Lane, Zanesville, Ohio.
 {¶ 20} "2. Present were Kristen, Adam Brookover and Johnny Bowers and they were discussing the up-coming trial of Ross Zwelling and that they were all witnesses and were going to testify at the trial. The subject came up about the gun that Ross Zwelling was supposed to have had when he approached the car that they were in on the date of the incident. Kristen said that she never saw a gun. Adam Brookover said that he didn't see a gun either. Johnny Bowers said if I say I saw a gun and the two of you say you didn't see a gun they won't believe me. So you have to tell them you saw a gun. At that point, Adam didn't say anything more. Johnny Bowers did make a *Page 7 
statement saying that he is tired of Ross Zwelling getting away with everything because his dad is a judge.
 {¶ 21} "3. Adam said to me a few days later that "Ross and I are goods friends and that he would not pull a gun on me."
 {¶ 22} At the hearing, Smith testified Violet Thompson and Kristine Kennedy were her two best friends. Adam Brookover and Johnny Bowers were Thompson's and Kennedy's respective boyfriends. Smith recalled, one evening in August, 2005, she was visiting Kristine Kennedy. Johnny Bowers, who lives with Kennedy, and Adam Brookover were also present. During the evening, one of the three, Kennedy, Bowers, or Brookover, said something about Appellant. Smith, not knowing anything about the incident giving rise to the charges against Appellant, asked, "What's going on?" According to Smith, Kennedy told her she, Bowers and Brookover were to testify in court they saw Appellant with a gun, but she (Kennedy) had never seen one. Smith asked Kennedy why she would testify to seeing a gun if she had not, to which Kennedy replied Bowers wanted her to.
 {¶ 23} Smith recalled Bowers making the comment he was sick of Appellant getting away with everything because his father is a judge. According to Smith, Bowers stated he intended to testify he saw a gun and wanted the others to testify likewise so he would not look like a liar. Smith explained she did not come forward with this information at the time because she never thought Appellant would be convicted. After reading about Appellant's appeal in April or May, 2006, Smith was "appalled" based upon the August, 2005 conversation with Kennedy, Brookover, and Bowers, and informed the appropriate individuals. *Page 8 
 {¶ 24} The trial court found there was little likelihood and clearly no strong probability Smith's testimony would change the results upon retrial. We do not find the trial court abused its discretion in making this decision.
 {¶ 25} At trial, Kennedy testified she did not see a gun. Further, the statements Kennedy, Brookover and Bowers gave to police at the time of the incident were substantially the same as their respective trial testimony, which belies appellant's assertion the three witnesses fabricated their story just before the trial. Evidence which merely tends to contradict evidence presented at trial, i.e., evidence offered to impeach a witness who testified at trial, does not warrant the granting of a new trial. State v. Seiber (1990), 56 Ohio St.3d 4. Any testimony offered by Smith at a new trial would merely be utilized to contradict these witnesses.
 {¶ 26} The trial court also found the statements contained in Dr. Zehnder's letter, asserting he is in possession of the gun Howard Zwelling gave his ex-wife, would not change the result upon retrial. We agree.
 {¶ 27} A defendant seeking a new trial on the ground of newly discovered evidence must produce affidavits of witnesses from whom such evidence is expected to be given. State v. Sheppard (1955),100 Ohio App. 399. Appellant only submitted Dr. Zehnder's statement in the form of a letter. This deficiency alone is enough to find the trial court did not abuse its discretion in denying Appellant's motion for new trial. Assuming, arguendo, Dr. Zehnder's letter was of appropriate evidentiary value, we find such was not of substantial import to establish the outcome of the trial would have been different had the jury heard such evidence. Dr. Zehnder's letter pertains to a peripheral issue raised at trial during the cross-examination of Howard Zwelling, appellant's father. *Page 9 
In essence, the evidence would be offered to contradict the rebuttal testimony of Officer Larry Brocklehurst who testified he had a conversation with Howard Zwelling regarding a .9 mm handgun. As stated supra, evidence which is offered to impeach a witness's trial testimony does not warrant the granting of a new trial. Appellant wanted to use Zehnder's statements for just that purpose.
 {¶ 28} Based upon the foregoing, we find the trial court did not err in overruling Appellant's motion for a new trial.
 {¶ 29} Appellant's first assignment of error.
 II {¶ 30} In his second assignment of error, Appellant contends the trial court erred in applying a sentencing scheme which was not in effect at the time of the commission of the offenses charged in the Indictment. Appellant asserts the trial court's imposition of such a sentence violates the ex-post facto and due process clauses of the United States Constitution; the Doctrine of the Separation of Powers, and the Rule of Lenity.[1]
 {¶ 31} The Constitutional arguments raised by Appellant in this assignment of error are identical to arguments raised and rejected by this Court in a number of prior decisions. See, e.g., State v.Paynter, Muskingum App. No. CT2006-0034, 2006-Ohio-5542; and State v.Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823. For the reasons set forth in those opinions, we overrule this portion of Appellant's second assignment of error. *Page 10 
 {¶ 32} With respect to Appellant's argument his sentence was contrary to the Rule of Lenity, we find such assertion to be without merit.
 {¶ 33} The rule of lenity was originally a common law rule of statutory construction which was codified in R.C. 2901.04(A). R.C.2901.04(A) states: "* * * sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." The rule of lenity states a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant where the intended scope of the statute is ambiguous. See, State v. Brown (May 2, 1997), 2d Dist. No. 96 CA 92, 1997 WL 216580, at 10, citing Moskal v. United States (1990),498 U.S. 103, 107-108. The rule of lenity "provides that ambiguity in criminal statutes is construed strictly so as to only apply to conduct that is clearly prescribed." State v. Goist, 11th Dist. No. 2002-T-0136, 2003-Ohio-3549, at ¶ 23, citing United States v. Lanier (1997),520 U.S. 259, 266.
 {¶ 34} In the instant case, Appellant was sentenced after the Ohio Supreme Court rendered its decision in Foster; therefore, the trial court was bound to apply the law announced by the Supreme Court of Ohio. There exists no ambiguity in the Ohio sentencing statutes followingFoster. Accordingly, the rule of lenity does not apply. SeeGoist, supra, at ¶ 23, citing United States v. Johnson (2000),529 U.S. 53, 59, (holding "[a]bsent ambiguity, the rule of lenity is not applicable to guide statutory interpretation.")
 {¶ 35} Appellant also asks this Court to overrule Foster. This Court does not have the authority to do such.
 {¶ 36} Appellant's second assignment of error is without merit and overruled. *Page 11 
 III {¶ 37} In his third assignment of error, Appellant asserts the trial court erred in imposing a sentence which was not consistent with sentences imposed for the same offenses committed by similarly situated offenders.
 {¶ 38} R.C. 2929.11(B) provides, in pertinent part:
 {¶ 39} "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 40} Prior to resentencing, Appellant filed a sentencing memorandum, to which he attached a chart showing sentences imposed upon ten offenders also charged with having a weapon under disability. Appellant also presented the trial court with additional examples at the resentencing hearing. Appellant concludes because his sentence was above the average of the sentences of these other offenders, such was inconsistent with other sentences imposed for similar crimes committed by similar offenders. We disagree.
 {¶ 41} "As a general rule, an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits." Toledo v.Reasonover (1965), 5 Ohio St.2d 22. In State v. Kingrey, Delaware App. No. 04-CAA-04029, 2004-Ohio-4605, this Court explained:
 {¶ 42} The basic principles for achieving the overriding purpose of felony sentencing are: (1) reasonableness, (2) proportionality, and (3) consistency. State v. *Page 12 Ryan, Hamilton App. No. C-020283, 2003-Ohio-1188, citing Griffin and Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.R.L.Rev. 1, 12.
 {¶ 43} "`[t]he Ohio plan attempts to assure proportionality in felony sentencing through consistency. R.C. 2929.11(B). Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors. The task of an appellate court is to examine the available data, not to determine if the trial court has imposed a sentence that is in lockstep with others, but to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although offenses may be similar, distinguishing factors may justify dissimilar sentences.' Ryan, supra at ¶ 10, (internal citations omitted). Further, the analysis noted: `An obstacle to appellate review for consistency of individual sentences under the Ohio plan is the current lack of acceptable sentencing data and records from which to determine the mainstream sentencing range for specific offenses. Absent such data, however, appellate courts can still compare similar cases for consistency in sentencing.' (Citations omitted).
 {¶ 44} "Simply pointing out an individual or series of cases with different results will not necessarily establish a record of inconsistency. State v. Gorgakopoulos, [8th Dist. No. 81934, 2003-Ohio-4341] at ¶ 23. * * * `[i]t is not the trial court's responsibility to research prior sentences from undefined, and largely unavailable, databases before reaching its sentencing decision. The legislature did not intend to place such a burden *Page 13 
on the trial court when it enacted 2929.11(B). The legislature's purpose for inserting the consistency language contained in R.C. 2929.11(B) is to make consistency rather than uniformity the aim of the sentencing structure. See Griffin and Katz, Ohio Felony Sentencing Law (2001), 59. Uniformity is produced by a sentencing grid, where all persons convicted of the same offense with the same number of prior convictions receive identical sentences, Id. Consistency, on the other hand, requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable. Under this meaning of "consistency," two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment. * * *."
 {¶ 45} Our review of the record reveals the trial court considered the purposes and principles of R.C. § 2929.11 et seq., even though it imposed maximum sentences to be served consecutively. Appellant cannot show his sentence is inconsistent with sentences imposed upon other criminals who committed similar crimes merely by presenting cases in which similar crimes received different sentences. Instead, our review centers around the particular facts and circumstances of the case to determine whether the trial court considered the proper factors and imposed a sentence which is not grossly inconsistent with those received by substantially similar offenders. Appellant's sentence passes that test.
 {¶ 46} Accordingly, Appellant's third assignment of error is overruled. *Page 14 
 {¶ 47} The judgment of the Muskingum County Court of Common Pleas is affirmed.
 By: Hoffman, P.J. Edwards, J. and Delaney, J. concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to Appellant.
[1] While researching this issue, we found the word "lenity" spelled "l-e-n-i-e-t-y" and "l-e-n-i-t-y." We have chosen to use the latter spelling. *Page 1