[Cite as *State v. McCree*, 2024-Ohio-777.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. CT2023-0035 |
| RICHARD McCREE | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
Pleas, Case No. CR2023-0667


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    March 4, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RONALD L. WELCH                       RICHARD D. HIXSON
PROSECUTING ATTORNEY              3808 James Court
JOHN CONNOR DEVER                  Suite 2
ASSISTANT PROSECUTOR             Zanesville, Ohio  43701
27 North Fifth Street, P. O. Box 189
Zanesville, Ohio  43702

*Wise, J.*

{¶1}    Appellant, Richard McCree, files this appeal from the Sentencing Judgment Entry of the Muskingum County Court of Common Pleas dated May 26, 2023 [nunc pro tunc]. Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}    The following facts are adduced from the pleadings, the transcript of the plea of guilty, and the sentencing hearings.

{¶3}    On September 11, 2022, R.A.M. was found deceased in the back seat of his vehicle located at the beach access parking lot of Dillon State Park, Muskingum County, Ohio.  Drug abuse instruments were found in the back seat by his body, and the Muskingum County Coroner was called to examine the body.  The coroner performed a "steel fusion toxicologist mouth test" which indicated that the decedent died as the result of an overdose of cocaine and a separate overdose of fentanyl – 40 times the amount of fentanyl to cause death.

{¶4}    Law enforcement began an investigation and discovered four different "Cash App" transactions from the decedent to a Shelby Mourer.

{¶5}    Further investigation led police investigators to determine that Mourer was the last person to see R.A.M. alive. She was arrested, read her *Miranda*[1] rights and agreed to talk with detectives.

{¶6}    She admitted to being with R.A.M. and used his "Cash App" money to buy crack cocaine from a man known to her as "Mississippi".   She smoked some, later met

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

up with R.A.M. at the Super 8 Motel, and the pair drove separately to the Dillon State Park area.

**{¶7}** R.A.M., according to Mourer, was not acting right, his speech was slurred and he wasn't finishing his sentences. He climbed into the back seat of his vehicle and Mourer thought he was "obviously overdosing". She left R.A.M. in the back seat of his vehicle and exited the Park in her own vehicle.

**{¶8}** Mourer identified a BMV photo of Appellant-Defendant Richard McCree, aka "Mississippi", as the person who supplied her with the crack cocaine. She told detectives McCree had been supplying her with crack cocaine for two to three years and that he lived on Hedgewood in Zanesville. She provided messages which corroborated her statements and described a shed behind his residence which contained a couch, digital scales and narcotics-related items.

**{¶9}** Six days later, law enforcement conducted a controlled buy by using a confidential informant (CI) who communicated with McCree via Facebook Messenger. McCree informed the CI that while he was at work, he had $100 worth of crack cocaine at his house on Hedgewood. The CI sent McCree $40 via "Cash App" and then took $60 in marked bills to the house on Hedgewood. When the CI arrived, he called McCree, who directed him to a 2006 green Chevrolet pickup truck on the premises. The CI retrieved the crack cocaine from a pocket in a pair of pants in the truck and left the $60 in marked bills.

**{¶10}** The crack cocaine was retrieved from the CI and tested positive as a cocaine base or crack cocaine.

**{¶11}** McCree instructed his ten-year old daughter to bring him the money from the truck and she did so, even though she was scared.

**{¶12}** Two days later, after a search warrant was authorized, law enforcement went to the Hedgewood home where they arrested McCree and seized items from the home, including baggies. McCree's ten-year-old daughter was interviewed and confirmed that her father asked her to retrieve the money from the truck and she did so.

**{¶13}** After his arrest, McCree was interviewed by law enforcement and admitted to trafficking the drugs to the CI, sending his daughter to retrieve the money from the truck, and receiving "Cash App" moneys from sales on September 10, September 14 and September, 17, 2022.

**{¶14}** Appellant was charged by indictment with two counts of corrupting another with drugs, a violation of R.C. 2925.02(A)((3), R.C. 2925.02(C)(1) [F2]; two counts of trafficking in cocaine, a violation of R.C. 2925.03(A)(1), R.C. 2925.03(C)(4)(a) [F5], one with a forfeiture specification [F4]; one count of endangering children, a violation of R.C. 2929.22(A), R.C. 2929.22(E)(2)(a) [M1] and three counts of money laundering, a violation of R.C. 1313.55(A)(1),  R.C.1315.99(C) [F3].

**{¶15}** Appellant entered a plea of not guilty and the matter was set for trial on February 23, 2023.

**{¶16}** On February 24, 2023, appellant appeared before the trial court and changed his plea from not guilty to guilty of one count of corrupting another with drugs, a felony of the second degree and one count of trafficking in drugs (cocaine) with a forfeiture specification, a felony of the fourth degree.  Appellant signed a Crim.R. 11 plea form acknowledging the potential sentences. Plea of Guilty, Feb. 24, 2023.

**{¶17}** At his plea hearing, appellant entered his plea of guilty after the trial court advised him of the potential minimum, maximum sentences, that prison time is mandatory, the effect of indefinite sentencing under Reagan-Tokes, and post-release control, Plea Tr., Feb. 24, 2023 at 3-13.  The trial court accepted his plea.

**{¶18}** The state agreed to dismiss the other counts in the indictment and reserved the argument on sentencing until the sentencing hearing. Plea Tr., Feb. 24, 2023 at 4. The trial court ordered a presentence investigation. Plea Tr., Feb. 24, 2023 at 19.

**{¶19}** On April 17, 2023, appellant returned to the trial court for sentencing. Appellant received a maximum sentence of eight to twelve years on his guilty plea of corrupting another with drugs.  He received a sentence of eighteen months on his guilty plea of trafficking in cocaine. The trial court ran the sentences concurrently for a prison term of eight to twelve years in a state penitentiary.  Appellant also received a sentence of twelve months on an unrelated crime which is not part of this appeal.  He was also informed of post-release control. Sentencing Tr. April 17, 2023 at 14.

**{¶20}** Appellant now appeals his sentence, assigning one error for review.

### ASSIGNMENT OF ERROR

**{¶21}** "DEFENDANT/APPELLANT'S MAXIMUM SENTENCE OF A MINIMUM EIGHT YEARS AND A MAXIMUM OF TWELVE YEARS WAS ERRONEOUS, AS THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDINGS THAT IT CONSIDERED THE PRINCIPLES AND PURPOSES OF FELONY SENTENCING UNDER R.C. 2929.11."

**{¶22}** In his sole assignment of error, appellant argues the trial court erred when it failed to consider the principles and purposes of felony sentencing when it sentenced

him to the maximum prison term for a second-degree felony. Specifically, appellant argues his sentence is disproportionate when compared with similar offenders with similar crimes and therefore inconsistent with R. C. 2929.11 and R.C. 2929.12. We disagree and affirm the trial court.

*Standard of Review*

**{¶23}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Cottrell,* 5th Dist., Muskingum No. CT2022-0061, 2023-Ohio-1391, ¶ 6.

**{¶24}** R.C. 2953.08(G)(2) states as follows:

(2) The court hearing an appeal under division (A)(B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the trial court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant.

(b) That the sentence is otherwise contrary to law.

Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph 3 of the syllabus.

A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R. C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range.' *State v. Padilla,* 5th Dist., Tuscarawas No. 2022AP 080 0023, 2023-Ohio-1995, ¶ 13, quoting *State vs. Dinka,* 12th Dist., Warren Nos. CA2019-03-022 and CA 2019-03-026, 2019-Ohio-4209, ¶ 36.

**{¶25}** As stated by the Ohio Supreme Court, R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* ¶ 42.

**{¶26}** The Ohio Supreme Court clarified the *Jones* opinion in *State v. Bryant,* 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 08, ¶ 22 saying:

….The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶ 31, 39. Nothing about the holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was imposed based on impermissible considerations – i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones,* this Court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are 'otherwise contrary to law.' *Jones* at ¶ 21, quoting R.C. 2953.08(G)(2)(b). This Court also recognized that 'otherwise contrary to law' means 'in violation of statute or legal regulations at a given time.' *Id* ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed. 1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable. *Id. ¶ 22.*

*Analysis*

**{¶27}** In this case, appellant concedes that his prison term of eight to twelve years for a felony of the second degree is within the statutory range. R.C. 2929.14(A)(2)(a). However, he argues that his sentence is contrary to law because his sentence is "not consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). To support his claim, he cites three cases out of Muskingum County

and argues that the defendants in those cases committed similar or even more egregious crimes, yet received a lesser sentence than the one imposed upon him. *Appellant's brief at 9-10.*

**{¶28}** Appellant raises this issue for the first time on appeal, and he made no similar argument to the trial court below. The information he now presents here is not part of the record. We have often noted that "the record cannot be enlarged by factual assertions in the brief." *State v. Buck,* 5th Dist., Muskingum No. CT2023-0003, 2023-Ohio-2824, ¶ 23.

**{¶29}** Appellant's argument would fail even if we were to consider the merits.

**{¶30}** A felony sentence should be proportionate to the severity of the offense committed, so as not to "shock the sense of justice in the community." *State v. Chafin,* 30 Ohio St.2d, 13, 17, 282 N.E.2d 46 (1972); R.C. 2929.11(B); *State v. Ewert,* 5th Dist., Muskingum No. CT2012-0002, 2012-Ohio-2671, ¶ 33.

**{¶31}** The record here does not support appellant's contention that his sentence is disproportionate to the crime he committed. His co-defendant received a similar sentence – eight years. Sentencing Tr. at 9. As noted by the trial court, his crime led to the death of another human being. So, too, he used his ten-year-old daughter to facilitate the crime. Sentencing Tr. at 11-12.

**{¶32}** Simply pointing out cases with different results from the same county does not establish a record of inconsistency. *State v. Hodge,* 5th Dist. Guernsey No. 09 CA 23, 2010-Ohio-2717, ¶¶ 17-18.

**{¶33}** A trial court is not expected to research prior sentences before reaching a sentencing decision. R.C. 2929.11(B) requires consistency. "Consistency requires a trial

court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable, but not necessarily identical." *State v. Buck, supra, ¶ 23.* Consistency does not require the trial court to keep a running tabulation of her or his prior sentences on all persons convicted of the same offense with the same number of prior convictions.  Two defendants convicted of the same offense could very well properly be sentenced to different terms of imprisonment. *State v. Zwelling,* 5th Dist., Muskingum No. CT2006-0055, CT2006-0051, 2007-Ohio-3691, ¶¶ 43-44.

**{¶34}** In this case, there is no evidence the trial court's sentence was constitutionally disproportionate. As already stated, while appellant received the maximum sentence for a second-degree felony, it is within the statutory range for a felony of the second degree.

**{¶35}** Notably, the trial court ran his sentence to trafficking in drugs concurrently and granted leave for the State of Ohio to dismiss six counts of the indictment.

**{¶36}** In giving the maximum sentence, it considered the pre-sentence investigation and noted the seriousness of the harm caused – the death of another person and appellant's use of his ten-year-old daughter to facilitate the drug sale.

**{¶37}** We hold that because the facts of the three cases appellant rely on in support of his claim of a disproportionate sentence were not part of the record below, his argument fails.  We also find that even if the record had been preserved, appellant's argument would fail, given  that the  trial  court  imposed  a sentence within the statutory

limits reasonably calculated to achieve the principles and purposes of sentencing and was not based on considerations that fall outside those that are contained in R. C. 2929.11 and R. C. 2929.12.  Appellant's sole assignment of error is overruled.

{¶38}  For the foregoing reasons, the decision of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.


By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.


JWW/kt 0228